603 P.2d 1009

STATE of Idaho, Plaintiff-Appellant,

v.

James William ALGER, aka James William McClure and Rick Lee Quanstrom, Defendants-Respondents.

No. 12903.

Supreme Court of Idaho.

Dec. 6, 1979.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Eugene A. Ritti, Deputy Attys. Gen., Boise, for plaintiff-appellant.

Richard D. Petersen of Neilson & Bedke, Burley, for defendants-respondents.

SHEPARD, Justice.

This is an appeal by the State from orders of the district court suppressing certain statements-confessions made by respondents McClure and Quanstrom shortly after their arrest on charges of first degree burglary. We reverse in part and remand in part for further proceedings.

Thefts for which defendants-respondents were later charged occurred in early October, 1977. Thereafter, two informants notified law enforcement agents that they (the informants) had been in an apartment occupied by several persons including McClure, and that there they (the informants) had observed specific items that had been stolen in the recent thefts. James Batterton, another of the occupants of the apartment, had told the informants that the goods had been stolen by persons, including himself and defendant McClure.

On the basis of that information, officers obtained a warrant to search the apartment. Pursuant to that warrant, the officers entered the apartment, notified the occupants of the search warrant, and after a cursory search of the apartment, discovered items of food and jewelry that matched the description of some of the stolen merchandise. The officers then arrested McClure. Thereafter, a two and one-half hour additional search of the apartment revealed additional items that were linked to the burglaries.

Following McClure's arrest, he was given his *Miranda* rights and confronted with a co-defendant's statement implicating him in the burglaries. He was told that he faced a possible fifty-six years in the penitentiary. Although it is unclear at what point in time, *i. e.,* before or after McClure began to make his confession, he was also told that if he cooperated the judge would be informed of that cooperation.

Two days after the McClure arrest, respondent Quanstrom was arrested. The record does not explicitly indicate whether the arresting officers had an arrest warrant. While in custody, Quanstrom was given his *Miranda* rights, confronted with the statements of co-defendants and told that he faced a possible sixty years in the penitentiary. The record indicates that prior to his confession an interrogating officer

and Quanstrom had a discussion. Quanstrom stated that on the basis of this discussion he (Quanstrom) *believed* that he would be charged as an accessory. The trial court found that these "implied" promises induced Quanstrom's confession.

Four days after Quanstrom's initial confession, he appeared before a magistrate court for arraignment. At that time he was informed that he had been charged as a principal to the burglary, rather than an accessory. Nevertheless, following that magistrate's hearing, Quanstrom not only reiterated his prior admissions to the three burglaries, but also admitted his involvement in yet a fourth burglary which was then under investigation.

Following a preliminary hearing, McClure and Quanstrom were bound over to stand trial in the district court, and, as aforesaid, moved to have their statements-confessions suppressed, which motion the court granted, and the State has appealed.

I.

VALIDITY OF McCLURE'S ARREST

A police officer may arrest a person without a warrant "[w]hen a felony has in fact been committed and he has reasonable cause for believing the person arrested to have committed it." I.C. § 19–603. Reasonable or probable cause has been defined as information that "would lead a man of ordinary care and prudence to believe or entertain an honest and strong suspicion that such person is guilty." *State v. Loyd,* 92 Idaho 20, 23, 435 P.2d 797, 800 (1967); *see Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964) (probable cause for arrest depends on "whether at that moment the facts and circumstances within their knowledge and of which they [police officers] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed . . . an offense"); *State v. Polson,* 81 Idaho 147, 339 P.2d 510 (1959); *State v. Autheman,* 47 Idaho 328, 274 P. 805 (1929).

The adequacy of probable cause is not measured against the high standards required for conviction. *Draper v. United States,* 358 U.S. 307, 311–12, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *Brinegar v. United States,* 338 U.S. 160, 172–75, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *see State v. Loyd,* 92 Idaho 20, 23, 435 P.2d 797 (1967). As the *Brinegar* Court noted, "[i]n dealing with probable cause . . ., as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." 338 U.S. at 175, 69 S.Ct. at 1310.

The trial judge here concluded there was insufficient probable cause for the arrest of McClure. The court noted that McClure's "mere presence" in the apartment and the lack of concrete evidence at the time of the arrest linking the jewelry and food items with the burglaries did not constitute probable cause for the arrest. In so doing the court evidently failed to consider the information furnished by the law enforcement agents, which information formed the basis for the search warrant. That information combined with other factors could reasonably cause a prudent person to believe McClure had committed the burglaries. Therefore, the trial court erred in not considering that information in its ruling on the probable cause issue.

Admittedly, mere presence is not sufficient probable cause for arrest. The case of *United States v. Di Re,* 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948), is, however, instructive here. There, Di Re and Buttitta were seated in a car with a third man who had just purchased counterfeit gas coupons. Since nothing else linked Di Re to the crime, the only factor justifying his arrest was his presence in the car and the Court there held that his mere presence without further probable cause was insufficient. However, as to Buttitta, police officers had been told by a reliable informant that Buttitta intended to sell the counterfeit coupons and were told at the time of the arrest that Buttitta was indeed the

seller. Buttitta then, unlike Di Re, was connected to the crime by more than his mere presence and there was sufficient probable cause for Buttitta's arrest. In the instant case, the situation of McClure is more analogous to that of Buttitta in *United States v. Di Re, supra.* In both cases officers relied on other information linking the men with the respective crimes and relied on more than "mere presence." *See also State ex rel. Glantz v. District Court,* 154 Mont. 132, 461 P.2d 193 (1969).

■ Here, the district court also noted the absence of concrete evidence linking the burglaries with the jewelry and food items found in the apartment prior to McClure's arrest. Probable cause does not require an officer to compile an ironclad case against a suspect. Rather, it deals with the probable consequences of all facts considered as a whole. As with McClure's "mere presence" the information received by the officers cast a different light on what might be otherwise innocent facts and enabled the officers to conclude that the items were indeed food stolen from the Farmer's Corner store. "[D]irect observations, insufficient unto themselves to establish probable cause, may nevertheless be added to trustworthy hearsay, which . . . is also insufficient unto itself, so that the combination of incriminatory elements may establish the probable cause which neither alone quite demonstrates." Moylan, *Hearsay and Probable Cause: An* Aguilar *and* Spinelli *Primer,* 25 Mercer L.Rev. 741, 778–79 (1974). Here, the presence of items with the same brand name as the stolen goods would not necessarily constitute sufficient probable cause. When such information is coupled with the officers' prior information, the requirements for probable cause are met. *Cf. Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) (officers personal confirmation of informant's description of innocent details sufficient for probable cause).

We turn now to the assertion of the respondents that the *Aguilar* two-prong test must be satisfied before the informants' assertions can be a basis for probable cause

for arrest. *See McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). *Aguilar* holds that hearsay information is a permissible foundation for probable cause if (1) the basis for declarant's knowledge is demonstrated, and (2) the declarant's reliability or credibility is established. *See United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *State v. Oropeza,* 97 Idaho 387, 545 P.2d 475 (1976). Here, there is no assertion of informant unreliability. However, respondents assert that the *Aguilar* standard is not met because the officers relied upon multiple hearsay. Batterton, one of the alleged burglars, told the informants of the theft, the location of the goods, and the identity of his co-conspirators, one of whom was McClure. Those informants observed the stolen goods in the apartment. All of that information was given to a law enforcement officer, who in turn signed the affidavit in support of the search warrant.

■ Multiple hearsay is permissible in establishing probable cause as long as the *Aguilar* two-prong test is satisfied at each link. *United States v. DiNovo,* 523 F.2d 197 (7th Cir.), *cert. denied,* 423 U.S. 1016, 96 S.Ct. 449, 46 L.Ed.2d 387 (1975) (double hearsay sufficient because each prong satisfied by *Aguilar* standards); *United States v. Romano,* 482 F.2d 1183 (5th Cir.) *cert. denied,* 414 U.S. 1129, 94 S.Ct. 866, 38 L.Ed.2d 753 (1973) (triple hearsay); *United States v. Wilson,* 479 F.2d 936 (7th Cir. 1973) (double hearsay); *Comi v. State,* 26 Md.App. 511, 338 A.2d 918 (1975); *Commonwealth v. Kaschik,* 235 Pa.Super. 388, 344 A.2d 519 (1975); *see United States v. Carmichael,* 489 F.2d 979 (7th Cir. 1972) (double hearsay approved but *Aguilar* test was not met); *State v. Oropeza, supra,* (double hearsay permissible in Idaho but *Aguilar* standard was not met at each link); 1 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 3.3 (1978); Moylan, *supra; cf. Madden v. State,* 263 Ind.

223, 328 N.E.2d 727 (1975) (affiant may rely on hearsay but informant may not). Regarding the first hearsay link, reliance on the narcotics agent, both *Aguilar* prongs are met. The credibility prong is satisfied by the affiant's status as a law enforcement agent. *United States v. Ventresca, supra; Rugendorf v. United States,* 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964); *see United States v. Romano, supra* (police justified in acting on fellow officer's statements; second hearsay declarant's credibility established by his status as attorney); *cf. Whitley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971) (probable cause for warrantless arrest based on hearsay from police radio). The second link poses no problem as the reliability of the confidential informants and the basis of their knowledge were set forth in the search warrant, which was admitted by stipulation before this Court.

The third link, Batterton, also poses no problems. The basis of the knowledge problem is satisfied by his speaking from firsthand experience. *Spinelli v. United States, supra* 393 U.S. at 425, 89 S.Ct. 584 (White, J. concurring); Comment, *The Informer's Tip As Probable Cause For Search or Arrest,* 54 Cornell L.Rev. 958, 960 (1969) ("The first test, the basis of knowledge test, demands that the informer have obtained his knowledge by personal observation or in some other dependable manner rather than through causal rumor"). His credibility is established by his declaration against his penal interest. *See, e. g., United States v. Fluker,* 543 F.2d 709 (9th Cir. 1976); *State v. Lewis,* 115 Ariz. 530, 566 P.2d 678 (1977); *Commonwealth v. Kaschik, supra.* According to the United States Supreme Court, "[a]dmissions of crime . . . carry their own indicia of credibility—sufficient at least to support a finding of probable cause . . . ." *United States v. Harris,* 403 U.S. 573, 583, 91 S.Ct. 2075, 2082, 29 L.Ed.2d 723 (1971) (plurality opinion). In his concurring opinion in *Spinelli,* Justice White makes this point explicitly. "But if, for example, the informer's hearsay comes from one of the actors in the crime in the nature of admission against interest, the

affidavit giving this information should be held sufficient." 393 U.S. at 425, 89 S.Ct. at 593 (White, J., concurring); *see* 1 W. LaFave, *supra* at § 3.3; 1 J. Varon, Searches, Seizures & Immunities 357 (2d ed. 1974); Moylan, *supra* at 762. Another indication of Batterton's credibility can be found in the circumstances surrounding his utterance. Batterton was not a police informer with ulterior motives, rather he was merely relating his experience as a burglar to a friend. *Comi v. State, supra; see Thompson v. State,* 16 Md.App. 560, 298 A.2d 458 (1973) (drug pusher telling client to return at specified time has no motive to lie; from a business standpoint there is a strong motive to tell the truth); W. LaFave, *supra* at § 3.3; Moylan, *supra* at 765.

■ We hold that the trial court's conclusion that McClure's arrest was not supported by probable cause was erroneous.

## II.

### VOLUNTARINESS OF McCLURE'S CONFESSION

■ Since the trial court here concluded that McClure's arrest was invalid due to an absence of probable cause, it did not rule upon the voluntariness of McClure's confession. We do not deem the record clear as to the exact "promises," if any, that were made to McClure in return for his confession, and whether those "promises" were made before or after his confessions. It is clear that McClure was told almost immediately that he was facing a possible fifty-six years in the penitentiary. Given the circumstances, that statement may or may not have been a fact. At most it might, within the totality of the circumstances, be construed as the exertion of improper influence. It is also suggested that the representation that his cooperation would be brought to the attention of the judge constituted a promise of leniency. Indications of cooperation are routinely brought to the attention of a sentencing judge and cases before this Court are replete with examples of such statements in the presentence report, which this Court has required to be

before a sentencing judge. Nevertheless, even is such actions were deemed to be promises of leniency, they do not necessarily render a confession involuntary. *People v. York*, 537 P.2d 294 (Colo.1975); *State v. Riley*, 19 Wash.App. 289, 576 P.2d 1311 (1978). *But see People v. Jiminez*, 21 Cal.3d 595, 147 Cal.Rptr. 172, 580 P.2d 672 (1978); *State v. Watson*, 82 N.M. 769, 487 P.2d 197 (1971). Rather, we believe the question of voluntariness must be resolved by examining the totality of the circumstances surrounding the confession. *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *State v. Powers*, 96 Idaho 833, 537 P.2d 1369, *cert. denied*, 423 U.S. 1089, 96 S.Ct. 881, 47 L.Ed.2d 99 (1975); *see also Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). As the record is unclear as to the "threats" and/or "promises of leniency," those issues must be determined by the trial court and the resolution of that question is, therefore, remanded.

### III.

### VOLUNTARINESS OF QUANSTROM'S CONFESSION

■ As indicated above, Quanstrom confessed shortly after his arrest. Quanstrom testified that he believed he would be charged only as an accessory. The trial court found that the State had failed to meet its burden of proof by showing that Quanstrom's confession was voluntary and suggested that Quanstrom confessed in reliance on an "implied" promise to reduce the charge from burglary to that of being an accessory. The record here reveals conflicting testimony regarding whether there was coercion, but there is sufficient, competent evidence to support this finding and, therefore, it will be sustained. *State v. Ramirez*, 116 Ariz. 259, 569 P.2d 201 (1977); *People v. Jiminez*, 21 Cal.3d 595, 147 Cal. Rptr. 172, 580 P.2d 672 (1978); *State v. Freeman*, 574 P.2d 950 (Kan.1978); *see State v. Chapple*, 98 Idaho 475, 567 P.2d 20 (1977); *State v. Griffith*, 97 Idaho 52, 539 P.2d 604 (1975); *State v. Bullis*, 93 Idaho 749, 472 P.2d 315 (1970); *State v. Oldham*, 92 Idaho 124, 438 P.2d 275 (1968).

■ As also noted above, four days after Quanstrom's initial confession, he was arraigned before a magistrate and there informed that he had been charged as a principal rather than an accessory. Following that hearing, Quanstrom reiterated his prior confessions. The trial court limited its findings of fact to Quanstrom's first confession and made no determination as to whether the subsequent confession was voluntary. When a prior confession is improperly induced, the rebuttable presumption is that all subsequent confessions suffer the same taint. Subsequent confessions are not admissible unless the State demonstrates that the fears or inducements which resulted in the initial confession are dispelled. *People v. Jiminez, supra*; *State v. Nunn*, 212 Or. 546, 321 P.2d 356 (1958). "[T]he proper inquiry is whether the conditions that rendered the pre-warning admissions inadmissible carried over to invalidate appellant's subsequent confession." *United States v. Toral*, 536 F.2d 893, 896 (9th Cir. 1976).

Here, the case of *United States v. Bayer*, 331 U.S. 532, 67 S.Ct. 1394, 91 S.Ct. 1654 (1947), is instructive. There the court found that the taint under which the first confession was given did not infect the second. In *Bayer* the defendant had confessed while he was confined to a psychopathic ward in an Army hospital. This confession was not offered in evidence, but six months later, when the constraints of the first confession had been removed, the defendant again confessed. The Supreme Court rejected the argument that the second confession was a fruit of the first, and stated:

"Of course, after an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag. The secret is out for good. In such a sense, a later confession always may be looked upon as fruit of the first. But this Court has never gone so far as to

hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a usable one after those conditions have been removed." 331 U.S. at 540–41, 67 S.Ct. at 1398.

*Leyra v. Denno*, 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948 (1954), must be contrasted with *Bayer*. In *Leyra*, the defendant confessed three times within the span of five hours. He had been subjected to intensive and continuing interrogation with very little sleep or food and the Court found that all the confessions were "simply parts of one continuous process. All were extracted in the same place within a period of about five hours as the climax of days and nights of intermittent, intensive police questioning." 347 U.S. at 561, 74 S.Ct. at 719. *See also Clewis v. Texas*, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967).

 The issue then is whether Quanstrom's second confession resulted from the continuing influences of the environment surrounding his first confession. Here, the circumstances of *Leyra* do not exist. There is no showing of abuse from which the fear of further injury might prompt a defendant to repeat his confession. As noted, the trial court found that Quanstrom initially confessed because of an "implied" promise that he would be charged with a lesser crime. Here, the only evidence is that the second confession was voluntary and at the time of the second confession Quanstrom was aware that any "implied" promise that he would be charged with a lesser crime was not being honored. We hold that the arraignment and Quanstrom's actual knowledge that he was being charged as a principal severed any connection between the inducement for his first confession and his subsequent confession. As stated in Wigmore, "[t]he focus [is] not on the impact of the first confession on the second but on the continuing effect of *prior coercive practices*." 3 J. Wigmore, Evidence § 855a, at 545 (Chadbourn rev. 1970) (quoting Kamisar, *Illegal Searches or Seizures and Contemporaneous Incriminating Statements : A Dialogue on a Neglected Area of Criminal Procedure*, 1961 U.Ill.L.F. 78, 101) (emphasis original).

## IV.

### LEGALITY OF QUANSTROM'S ARREST

 Respondents argue for the first time on appeal that Quanstrom's arrest is illegal. Respondent had the responsibility of raising this issue before the trial court and thereby establishing an adequate record on appeal. The record is unclear as to whether or not there was a warrant for the arrest of Quanstrom. Indeed, the absence of a warrant would not invalidate an otherwise valid arrest. *See Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). As stated in *United States v. Watson*, 423 U.S. 411, 417, 96 S.Ct. 820, 824, 46 L.Ed.2d 598 (1976), "[t]he necessary inquiry, therefore, [is] not whether there was a warrant or whether there was time to get one, but whether there was probable cause for the arrest." The record only demonstrates that Quanstrom was arrested "at home." The precise facts underlying "at home" are not demonstrated in the record nor are the circumstances of the arrest. Hence, that assertion, standing alone, does not automatically invalidate an arrest. *See United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976). We will not infer an invalid arrest nor on appeal relieve the respondents of their burden of adequately establishing a record by presenting that issue to the trial court. *Lockard v. State*, 92 Idaho 813, 451 P.2d 1014 (1969); *State v. West*, 92 Idaho 728, 449 P.2d 474 (1969).

The orders of the trial court are reversed in part and remanded in part for further proceedings consistent herewith.

DONALDSON, C. J., BAKES and BISTLINE, JJ., and DUNLAP, J. Pro Tem., concur.