858 P.2d 800

STATE of Idaho, Plaintiff–Respondent,

v.

Michael WHITELEY, Defendant–Appellant.

No. 19503.

Court of Appeals of Idaho.

July 9, 1993.

Petition for Review Denied Sept. 15, 1993.

Weinpel, Woolf & Combo, Idaho Falls for defendant-appellant. Stevan H. Thompson argued.

Larry EchoHawk, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen., for plaintiff-respondent. Michael A. Henderson argued.

SWANSTROM, Judge.

Michael Whiteley was convicted by a jury of first degree kidnapping and rape. I.C. §§ 18–4501, 18–4502, 18–6101. He was sentenced to a minimum period of confinement of twelve years on each count with a maximum period of twenty-five years on the rape count and a maximum life term on the first degree kidnapping count. Whiteley claims that the district court erred by denying a supplemental motion to suppress which sought to exclude evidence found in his duffel bag and his pretrial statement to a law enforcement officer. Next, Whiteley asserts that the court erred by not admitting into evidence taped telephone conversations between Whiteley and the victim. Finally, Whiteley asserts that the record lacks sufficient evidence to support his convictions. This final issue on appeal requires us to examine the evidence supporting the convictions, thus we will explore the facts in more detail below. We affirm the judgments of conviction.

The victim and Whiteley had a vacillating relationship. They first met in August, 1990, a month after Whiteley had left his wife and shortly after the victim had come to this country. The victim cleaned Whiteley's house, and the two began seeing each other socially. In September, 1990, the victim filed for a civil protection order (CPO) against Whiteley to prevent him from coming near her. Three days later, the court dismissed the CPO pursuant to

the victim's request.[1] They married in October, 1990. Later that same month, the victim left Whiteley and obtained an annulment. In November, 1990, the victim filed for another CPO against Whiteley, which was granted. She filed aggravated assault charges in December, but later requested that they be dropped.

Whiteley and the victim went to Utah three times in January, 1991. The victim testified that these trips were against her will. The final trip, which was on January 15, gives rise to the charges for which Whiteley was convicted. After they had returned to Idaho Falls, the police arrested Whiteley for violation of the CPO. Although the police arrested him for a CPO violation, after questioning the victim and Whiteley and discovering physical evidence at the scene of the arrest, he was charged with and convicted of rape and first degree kidnapping.

## I. SUPPLEMENTAL MOTION TO SUPPRESS

After he had filed a motion to suppress which was granted and is not at issue in this appeal, Whiteley filed a supplemental motion to suppress evidence found in his duffel bag and statements made to a law enforcement officer after his arrest. The district court found that Whiteley had consented to the search of his duffel bag. The court also found that Whiteley was not in custody during the officer's initial questioning, and further, that Whiteley had knowingly, intelligently, and voluntarily waived his *Miranda*[2] rights after his arrest. As a result, the court denied the supplemental motion to suppress.

Whiteley maintains that he did not consent to the search of his duffel bag, that the search was not conducted pursuant to a valid arrest, and that the search exceeded the scope of searches authorized under case law for weapons or where the law enforcement officer reasonably believes that evidence may be destroyed. The other portion of the supplemental motion to sup-

press attempted to prevent the introduction of statements made by Whiteley to a law enforcement officer after his arrest. Whiteley contends that the arrest was invalid and that the statements are too closely connected to the arrest.

■ We recently addressed the standard of review we apply in appeals from orders denying motions to suppress. *State v. Aitken*, 121 Idaho 783, 828 P.2d 346 (Ct.App. 1992). Where findings of fact are supported by substantial evidence, we will not disturb them; however, we freely review the trial court's determination as to whether constitutional requirements are satisfied in light of the facts. *State v. Weber*, 116 Idaho 449, 776 P.2d 458 (1989).

### A. Evidence in Duffel Bag

■ The Fourth Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment, and Art. 1, § 17 of the Idaho Constitution guarantee people to be secure from unreasonable searches and seizures. A search of a person or of one's belongings is generally unreasonable unless a valid warrant exists or unless the facts authorize the application of a judicially recognized exception to the warrant requirement. *State v. Rusho*, 110 Idaho 556, 716 P.2d 1328 (Ct.App.1986) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)). Consent is an established exception to the warrant and probable cause requirements. *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). The state must show that the consent was free and voluntary and not a result of duress or coercion, either direct or implied. *Id.* The voluntariness of a defendant's consent to search is to be determined in light of all of the circumstances. *Id.; State v. Aitken*, 121 Idaho at 784, 828 P.2d at 347.

■ The officer who arrested Whiteley testified at the suppression hearing that when called to the victim's residence on January 16, he was aware there had been problems between Whiteley and the victim

---

1. This dismissal order was admitted at the trial as exhibit H.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

and was aware that a CPO existed barring contact between the two. The officer testified that en route to the victim's house, he had asked the dispatcher to confirm that the CPO was still valid and was told that it was. When the officer arrived at the scene, the victim, her mother, another man, and Whiteley were all outside. He told the other man, the victim and her mother to go inside the house while he questioned Whiteley. After another officer arrived, the first officer went into the house to talk to the victim and the other two. The victim told the officer that Whiteley had forcibly taken her to Utah and raped her. She also told the officer that Whiteley had threatened her with a stun gun and handcuffs which she said were in his duffel bag.

Throughout this time Whiteley was holding a duffel bag, a briefcase and a pillow. He wanted to set these items down; however, there was snow on the ground. The second officer offered to allow Whiteley to place the items into a patrol car, and Whiteley agreed. When the first officer came back out, he arrested Whiteley for violation of the CPO. After handcuffing Whiteley, but before he placed him in the patrol car, the officer asked him if he could search his bags. The officer testified at the suppression hearing that Whiteley had agreed to the search. However, Whiteley testified at the hearing that he had refused the officer's request to search his bags. The evidence found in Whiteley's duffel bag consisted of a "stun gun" or shocking device and a pair of handcuffs.

In denying this portion of the supplemental motion to suppress, the district court expressly found that Whiteley had given the officer consent to search his duffel bag. Whiteley contends that due to the conflicting testimony of the officer and himself, the state did not show by clear and convincing evidence that he had voluntarily consented to the search of his duffel bag. He offers no authority to support the asserted requirement that the state must show consent by this level of proof. The state has correctly recited the required burden of proof to be by a preponderance of the evidence. *State v. Aitken*, 121 Idaho at

785, 828 P.2d at 348. The state contends that the supplemental motion to suppress was properly denied with regards to the duffel bag evidence because Whiteley had consented to the search.

The district court's factual finding that consent had been given was based on a credibility determination. The officer's testimony constitutes substantial and competent evidence to support the court's finding that consent was given. "The credibility of witnesses and the weight to be given their testimony is exclusively within the province of the trier of facts." *Thomson v. Marks*, 86 Idaho 166, 384 P.2d 69 (1963). We will not substitute a different conclusion on appeal regarding conflicting testimony.

Notwithstanding the voluntary consent, Whiteley further claims that the arrest was illegal. Where consent and the subsequent search accompany an arrest, the events are intertwined to the extent that if the arrest is illegal, the search pursuant to the consent is illegal as well. *State v. Weber*, 116 Idaho at 453, 776 P.2d at 462 (quoting *State v. Barwick*, 94 Idaho 139, 142, 483 P.2d 670, 673 (1971)). The consent given by Whiteley immediately followed his arrest by the officer; therefore, in order for the evidence found in the duffel bag to be admissible, the arrest must have been legal.

Whiteley rests his argument that the arrest was illegal primarily on the ground that the CPO was invalid. The state asserts that Whiteley challenges the validity of the CPO for the first time on appeal. Our review of the transcript of the suppression hearing indicates that Whiteley testified as to his beliefs regarding the CPO's validity and counsel argued the issue below. The state is correct, however, that Whiteley did not cite in the written motion as a reason to suppress the evidence, the alleged invalidity of the CPO. Nevertheless, the district court was presented with the issue, and the state noted at the suppression hearing that Whiteley was challenging the validity of the CPO where it had not been challenged in the

written motion. We note that the state did not request additional time to present other exhibits or testimony to combat Whiteley's allegations. We will address the issue.

■ First, Whiteley relies on testimony from the victim where she answered "yes" after being asked whether exhibit H was a copy of the order dismissing the November CPO. Whiteley contends that this testimony supports his assertion that the November CPO had been dismissed, thereby invalidating the arrest based on a violation of that order. However, this testimony was presented at trial, not at the suppression hearing. Therefore, this evidence was not before the district court at the time the supplemental motion to suppress was decided. In ruling on the supplemental motion to suppress, the court did not make any finding as to whether the November CPO had been dismissed. Moreover, exhibit H does not relate to the November CPO. It was signed by a magistrate in September, 1990, and dismissed the September CPO. It could not and did not purport to dismiss the November CPO, which had not been entered at the time the order was issued. Furthermore, counsel for Whiteley conceded at the suppression hearing that the law enforcement records probably reflected that the CPO "was still in effect and valid."

Second, Whiteley argued below and maintains on appeal that there was a misrepresentation by a deputy prosecuting attorney and a misunderstanding on his part as to the validity of the CPO. Whiteley testified at the suppression hearing that he was aware that the victim had written a letter requesting that the November CPO be dismissed. The letter which is part of our record on appeal has a file stamp of December 24, 1990, and states that the victim's request was based on the condition that Whiteley leave the state of Idaho permanently.[3] Whiteley also testified that he believed that the CPO had been withdrawn, based on a deputy prosecuting attorney's

statement in response to Whiteley's questions about the charges regarding the December, 1990, aggravated assault and the November CPO. Whiteley testified that the deputy prosecuting attorney had said: "Everything has been dropped. I don't want to hear a thing from any of you again."

As the state notes, the fact that the victim requested that the CPO be dismissed does not serve to dismiss it and thus does not invalidate an arrest based upon it. The state also asserts a point that the district court implied at the suppression hearing, namely, the prosecutor's office does not have authority to dismiss CPOs. As stated above, Whiteley essentially conceded the fact that no order dismissing the November CPO had been filed. Whiteley has cited no authority for the proposition that a person's belief that a prior order has been dismissed nullifies an action based on a subsequent violation of that order.

The fact that the valid CPO was not introduced into evidence at the suppression hearing does not invalidate the January 16, 1991, arrest, as Whiteley seems to imply. A valid order remains in effect until the court takes action to dismiss it. I.C. § 39–6311(4). Whiteley could have introduced the November CPO which, theoretically, may have expired by its own terms before the arrest. Similarly, Whiteley could have introduced a court order dismissing the November CPO. Neither of these was done, and it is clear that there existed a valid November CPO at the time of Whiteley's arrest. The state cites I.C. § 39–6312(2) as authority for the arrest. That statute provides that a violation of a CPO is a misdemeanor and that, should a law enforcement officer have probable cause to believe a person has violated such an order, the officer may arrest the person. The arrest was valid as it was based on Whiteley's violation of the CPO. Therefore, Whiteley's consent on which the search was based was

3. In his appellate brief, Whiteley misstates his argument at the suppression hearing. On appeal he contends that an order signed by a magistrate dismissing the November CPO was not properly delivered to the court clerk. According to the transcript of the suppression hearing, it was the *letter* written by the victim, and not an order, which had not been delivered to the court clerk. No order dismissing the CPO had been prepared and signed by the court.

valid as well. Because we hold that the arrest was legal on the basis of the violation of the CPO, we need not address the state's alternative argument that the arrest was valid because the officer had probable cause to believe that Whiteley had committed a felony, kidnapping. *See* I.C. § 19–603. In view of the holding, we also need not address Whiteley's contention that the search was beyond the scope of a "patdown" search authorized by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny.

### B. Statements Made After Arrest

Whiteley contends in his brief that oral and written statements made after his arrest should have been suppressed. The written statements encompassed by the motion were handwritten by Whiteley in the interrogation room. This handwritten document was admitted at the motion to suppress and at the trial. It was not a confession, but rather was an attempt to show the consensual nature of the victim's and Whiteley's trip to Utah on January 15 and 16, 1991, and to explain the events surrounding that trip.

■ The supplemental motion to suppress also sought to suppress oral statements allegedly made by Whiteley, as testified to by the arresting officer at the preliminary hearing. Whiteley contends that these statements were made after he was taken into custody, but before he was apprised of his *Miranda* rights. Our appellate record contains an order filed February 28, 1991, directing a preliminary hearing transcript to be prepared at county expense. However, the transcript is not part of our appellate record. It is the burden of Whiteley as the appellant to furnish an adequate record on appeal. *State v. Phillips*, 118 Idaho 27, 794 P.2d 297 (Ct.App.1990). Full review of the decision not to suppress this evidence without the transcript of the preliminary hearing is impaired. Nevertheless, we are able to glean the nature of the statements referred to by

Whiteley's supplemental motion to suppress from the parties' arguments and the transcript of the suppression hearing.

■ The oral statements sought to be suppressed consisted of initial statements made to the officer at the scene of the arrest before he was afforded *Miranda* warnings. Other statements Whiteley sought to suppress apparently occurred at the jail. The officer testified that he gave Whiteley his *Miranda* warnings before he ever questioned him at the jail. One of these other statements is an admission by Whiteley to the arresting officer that he had engaged in non-consensual sexual intercourse with the victim in Pocatello approximately one week before January 16, 1991.[4] The officer also testified at the suppression hearing that he had asked Whiteley about an incident he had investigated, also approximately a week earlier, where the victim's telephone line was cut. The officer testified that Whiteley neither admitted nor denied having cut the victim's telephone line, but that he attempted to change the subject of discussion.

We have set forth the bifurcated standard of review from a decision on a motion to suppress above. *See State v. Weber*, 116 Idaho 449, 776 P.2d 458 (1989). The district court denied the supplemental motion to suppress, finding that Whiteley was not in custody during the officer's initial questioning. The officer's testimony at the suppression hearing shows that when he arrived at the scene of the victim's house on January 16, 1991, Whiteley and the victim's mother were having a dispute. The officer simply asked Whiteley what was going on after he had separated the other three present. The officer then went into the house and questioned the victim, her mother and the other man present. It wasn't until the officer returned outside that he arrested Whiteley. Given the lack of a complete record on appeal, Whiteley's failure to point to any specific circumstances indicating that he was in custody at the time of the initial questioning, and the

---

**4.** The rape for which Whiteley was convicted occurred the day of his and the victim's return from Utah on January 16, 1991.

officer's testimony regarding the circumstances of his initial contact with Whiteley on January 16, 1991, we accept the court's finding that Whiteley was not in custody at the time the officer initially questioned him.

The court also found that Whiteley had knowingly, intelligently, and voluntarily waived his *Miranda* rights after his arrest. However, Whiteley contends that the statements were involuntary as a result of the combination of the officer's ambiguous statements which amounted to badgering and coercion and because Whiteley had requested an attorney and none was provided. Whiteley testified that the officer pressured him into signing the *Miranda* waiver form and into making a statement. He also testified that he had requested that an attorney be present prior to his signing the *Miranda* waiver form. Finally, Whiteley testified that he would not have made statements to the officer, but for the officer's promises that if he cooperated, the officer would let him go. Whiteley relies on the fact that the officer had initially testified at the suppression hearing that Whiteley had signed his handwritten statement. When presented with this original statement at the same hearing, the officer then admitted that he had signed Whiteley's name on the statement which Whiteley had written.

 In order to find a violation of a defendant's due process rights by virtue of an involuntary confession, coercive police conduct is necessary.[5] *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 521–22, 93 L.Ed.2d 473, 484 (1986); *State v. Johns*, 112 Idaho 873, 736 P.2d 1327 (1987). The state must show by a preponderance of the evidence that the defendant's statements were voluntary. *State v. Johns*, 112 Idaho at 878, 736 P.2d at 1330 (citing *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972)). A determination of the voluntariness of a confession is to be made in light of the totality of the circumstances. *State v. Johns*, 112 Idaho at 879,

736 P.2d at 1331 (citing *Haynes v. Washington*, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963)). The critical focus is whether the defendant's will was overborne by the police conduct. *Schneckloth v. Bustamonte, supra.*

At the suppression hearing, the officer testified that upon arriving at the police station, he placed Whiteley in an interrogation room and immediately read *Miranda* rights to Whiteley, who acknowledged his awareness of the rights by initialing an identical form, which was admitted as the state's exhibit A. He testified that Whiteley had understood the rights read to him, that he had voluntarily waived those rights, had agreed to talk with the officer and to reduce some of his statements to writing. The officer testified that he did not make any promises regarding the dismissal of the kidnapping count or that the prosecutor's office would be cooperative. The officer testified that he had essentially told Whiteley that if he cooperated, it would help matters. The officer also testified at the suppression hearing that after he had returned to the interrogation room the second time, Whiteley became frustrated and stated that he did not wish to answer any more questions and that he wanted to speak with an attorney. The officer testified that he concluded the interview at that point. According to the officer, Whiteley had "Pretty much finished writing out the statement prior to me coming in the second time."

 Where explicit factual findings have not been made, we extrapolate the implicit findings of fact from the record and will uphold those if they are supported by substantial, competent evidence. *State v. Middleton*, 114 Idaho 377, 757 P.2d 240 (Ct.App.1988). Implicit in the court's finding that Whiteley had knowingly, intelligently, and voluntarily waived his *Miranda* rights is the finding that after Whiteley was arrested, he was not extensively questioned until he had waived his *Miranda* rights. This finding is supported by sub-

---

**5.** The statements Whiteley sought to suppress did not amount to a confession of the crimes for which he was charged.

stantial, competent evidence in the form of the officer's testimony that he had informed Whiteley of his *Miranda* rights and obtained a waiver of those rights prior to any questioning. Another implicit finding, which is supported by substantial evidence, is the finding that when Whiteley requested an attorney, the interview was concluded.

Also implicit is the finding that the representations made by the officer do not rise to such a level to constitute coercion. In this finding the district court made a credibility determination. The court apparently believed the officer's version, namely, that it would help if he cooperated. The court implicitly rejected Whiteley's characterization of the officer's statements as badgering and coercion. Where the conclusion of the court is not clearly erroneous, we will not reverse. The officer's statements, related in his testimony, did not lead Whiteley to believe that he would be set free from incarceration after any certain period of time or that his sentence would be much less than otherwise by virtue of his talking with the police. *Compare State v. Kysar,* 114 Idaho 457, 757 P.2d 720 (Ct.App.1988) (officer's statements that defendant would probably be out in time to see his baby born and that officer would inform the prosecutor of his cooperation rendered confession involuntary). Also, unlike the statements made by the police in *Kysar,* in this case, Whiteley was informed by the officer that the officer did not have authority to fulfill any promise as to sentencing. For the above reasons, we hold that the district court did not err in refusing to suppress statements made by Whiteley.

## II. TAPES IN JURY ROOM

In the presentation of his case, Whiteley attempted to show that the relationship between himself and the victim was more cordial than what the state had contended. The victim testified that she was afraid of Whiteley. She testified that he had forced her to marry him through intimidation, and that he had forced her to travel with him to Utah on other occasions besides January 15, 1991. Whiteley presented three tapes which were admitted into evidence in order to impeach the victim's testimony. The tapes consisted of telephone conversations of the victim with her mother, Whiteley, and Whiteley's ex-wife, whom Whiteley remarried in February of 1991. These tapes were played for the jury in court and were taken into the jury room with the other exhibits during its deliberations.

Shortly after the jury had started its deliberations, and outside the presence of the jury, Whiteley asked the district court to rule on his request to allow the jury to listen to the tapes he had admitted into evidence. The court allowed the tapes to go to the jury room along with all of the other exhibits, but refused to provide the jury with a tape player. The court concluded that to supply the jury with a tape player would unduly emphasize the tapes as compared with contrasting live testimony presented by the state which Whiteley sought to impeach by admission of the tapes. It is unclear whether the court would have allowed the jury to listen to any or all of the three tapes had a juror requested a tape player. That issue is not before us as no juror asked to listen to the tapes again during deliberations. Nor does the record give us any reason to believe that the court's ruling was ever communicated to the jury so as to discourage a juror's request to hear the tapes again.

Both parties cite authority stating that the standard of review governing a trial court's determination of the jury's access to such evidence in its deliberations is whether the trial court abused its discretion. The state contends that the district court did not abuse its discretion. Additionally, the state contends that even if we presume the failure to provide the jury with the means to listen to the tapes in the jury room was an abuse of discretion that error was harmless. We agree.

As the appellant, Whiteley has the burden of demonstrating that the failure to provide the jury with a tape player was prejudicial error. *See State v. Sharp,* 101 Idaho 498, 507, 616 P.2d 1034, 1043 (1980). Absent a showing of prejudice, the error will be deemed harmless. *Id.; see*

*also* I.C.R. 52. In order for an appellate court to sustain a conviction on the basis of harmless error, it must hold beyond a reasonable doubt there was no reasonable possibility that the action complained of contributed to the conviction. *State v. Sharp, supra.*

Unlike a case where evidence was not admitted at trial, the action complained of in this case is that the jury was not affirmatively given the opportunity to listen to three tapes—one of which was entirely in Spanish and translated by an interpreter in open court—for a second or third time. *Compare State v. Thacker,* 100 Idaho 564, 602 P.2d 62 (1979) (prejudicial error occurred when a rejected exhibit was mistakenly given to the jury during its deliberations). All three tapes were played for the jury in court.

Given the fact that all three tapes were heard by the jury during the trial, we hold that the court did not abuse its discretion by deciding initially not to provide the jury with a tape player. Moreover, it is not shown that the jury was ever made aware of this ruling, so it could not have discouraged the jury from requesting a tape player if the jury had wanted to hear the evidence again. We will not speculate that the mere absence of a tape player in the jury room deprived the jury of any exculpatory evidence that they desired to hear again. Applying the "beyond a reasonable doubt" standard from *Sharp*, we hold that there was no reasonable possibility that the action complained of contributed to the conviction.

## III. SUFFICIENCY OF EVIDENCE

Finally, Whiteley contends that the evidence is insufficient to support convictions for rape and first degree kidnapping. Whiteley does not argue that the state failed with respect to any particular element. Rather, he contends that the evidence presented by the state, in particular the testimony of the victim, was contradictory and unreliable, and therefore, not credible.

Where there is substantial, competent evidence to support a jury verdict, it will not be disturbed on appeal. *State v. Clayton,* 101 Idaho 15, 607 P.2d 1069 (1980). A judgment of conviction must be reversed if the evidence is insufficient to support the conviction. *Id.* On appeal, the facts and inferences drawn therefrom are construed in favor of upholding the verdict. *State v. Aragon,* 107 Idaho 358, 366, 690 P.2d 293, 301 (1984).

At the conclusion of the state's case, Whiteley moved to dismiss the charges contending that the evidence presented by the state was insufficient to sustain a conviction on the charges. The court denied the motion concluding that the state had presented a prima facie case. Thereafter, Whiteley presented evidence designed primarily to attack the credibility of the victim.

The defense presented testimony from a hotel clerk, who worked at the hotel where Whiteley and the victim had spent the night of January 15, who stated that she had seen the victim walking alone outside the hotel on January 16. This conflicted with the victim's testimony that Whiteley had not let her out of the hotel room. The defense also presented testimony from people who lived in Idaho Falls who stated that they had seen the victim and Whiteley in public at various times before January 15, 1991, where the two had appeared to enjoy each other's company, and the victim did not appear afraid or threatened. Whiteley also contends that the victim's vacillating attitude, evidenced by two CPOs against him, the dismissal of the first CPO, her letter requesting dismissal of the second, and her filing of aggravated assault charges which she eventually dropped, put into question the reliability of her testimony. Whiteley also presented the tapes as exhibits in an effort to persuade the jury that the relationship between Whiteley and the victim was cordial and that the victim's testimony regarding her fear of and victimization by Whiteley should not be given credence.

The state's case consisted of testimony from the victim, primarily in English, but

at times in Spanish which was translated by an interpreter. She testified about being forced and intimidated into first marrying Whiteley, and second going to Utah with him on trips on and before January 15, 1991. The victim testified about how on January 15, Whiteley had stopped his car after following the victim for a short distance in her car, checked the door to the victim's car, after being refused entry went to his car to obtain a key to the victim's car, and then returned to her car to let himself in, all while the victim was stopped at a traffic light. She testified that Whiteley had touched a stun gun to her leg while they traveled to Utah and about his threats to use the stun gun on her should she try to escape. She also testified that while in Utah, where the two had stayed overnight in a hotel, she was afraid and unable to attempt to get help or escape due to her fear of reprisal. She testified that she was raped three times in Utah and once on January 16 in Idaho during the return trip.

The state's case was also supported by the existence of the stun gun and the handcuffs found in Whiteley's duffle bag by the officer. Whiteley's ex-wife testified that he had used those items in his work as a skip tracer. The victim's mother testified that she had received two telephone calls from her daughter, the first on January 15, where she had heard Whiteley say "English, English, no Spanish." In the second call the morning of January 16, the victim's mother testified that she had heard Whiteley say "[d]on't call to the police." Other incriminating testimony came from a friend of the victim who testified that she had spoken with Whiteley a few days before the trial where she had told Whiteley, "These are serious criminal charges." She testified that Whiteley had replied, "I know they are. I am sorry they happened; I am sorry I did it."

It is well established that the credibility of witnesses and the weight to be given their testimony is for the jury and not the court to determine. *State v. Cotton*, 100 Idaho 573, 602 P.2d 71 (1979). Given the applicable standards and the evidence presented in the record, we hold that there exists substantial, competent evidence to sustain the jury's verdict. We will not attempt to second guess the credibility determinations necessary to reach a verdict in this case.

## CONCLUSION

The evidence discovered by the law enforcement officer in his search of Whiteley's duffel bag was made pursuant to a valid arrest and was authorized by Whiteley's consent. Whiteley's statements made to the officer were made pursuant to a knowing, intelligent, and voluntary waiver. The district court did not err in refusing to suppress this evidence. Whiteley did not show that the court erred or abused its discretion in refusing to allow a tape player to be submitted to the jury with the exhibits, nor did he show any prejudice from this decision. Finally, contrary to Whiteley's assertion, substantial evidence supports his conviction. We affirm the judgments of conviction.

WALTERS, C.J., and WINMILL, J., pro tem., concur.