844 P.2d 1358

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Milton McLEAN, Defendant–Appellant.**

**No. 18908.**

Court of Appeals of Idaho.

Dec. 1, 1992.

Petition for Review Denied Feb. 18, 1993.

Weinpel, Woolf & Combo, Idaho Falls, for defendant-appellant. Stevan H. Thompson argued.

Larry EchoHawk, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen. (argued), for plaintiff-respondent.

SWANSTROM, Judge.

Milton McLean entered a conditional plea of guilty to two counts of lewd conduct with a minor which he committed while on probation for another offense. I.C.R. 11(a)(2). The written plea agreement reserved McLean's right to appellate review of the district court's order denying McLean's motion for suppression of his statement to a detective. McLean disputes the court's finding that this statement was voluntary, and he asserts that his unwarned first statement to his probation officer tainted the subsequent statement which was given immediately following the interview with his probation officer. McLean also asserts that he gave a statement to the detective only because of promises made by his probation officer. For the reasons explained below, we reverse the denial of the motion to suppress the statement to the detective and remand for fur-

ther proceedings consistent with this opinion.

Near the first of October, 1989, McLean was told by his former wife that criminal charges would be filed against him in Bonneville County for molestation of his two stepdaughters. McLean left the area. At the time, he was on probation for aggravated battery committed in Ada County in 1982. He had been sentenced on this charge, but the court later suspended the sentence and released McLean on probation.[1]

Within a few days McLean called his probation officer to say that he was returning to Idaho Falls and that he wanted to discuss his probation and the accusations of child molestation. His probation officer later testified that McLean "knew that he was going to be arrested when he returned. He knew that."

On October 10, 1989, in response to a telephone call from McLean in Idaho Falls, the probation officer drove to pick up McLean, and the two went to a cafe to discuss the allegations made by his ex-wife that he had molested his two stepdaughters. He wanted to know what would happen to him on these charges and on the probation violation for leaving the state. After some conversation, the probation officer took McLean to the law enforcement building where the discussion continued, and McLean wrote out a statement of his illicit sexual behavior with the girls.

At some point after receiving the call from McLean, the probation officer contacted Deputy Sheriff McCandless (hereinafter detective) to say that "he had Mr. McLean in town" and he asked the detective if he wanted to interview him. According to the detective, "he said that he thought that [McLean] would interview with me after they completed their probation interview." The probation officer agreed that after he finished talking to

McLean he would take McLean to the sheriff's department so the detective could question him about the alleged child molestation.

Within minutes after McLean completed his written statement, the probation officer took the statement downstairs and gave it to the detective to read. The probation officer then brought McLean down to meet the detective. While the probation officer remained in the room, the detective gave McLean the *Miranda* warnings and conducted a separate interview, which was based in part on McLean's written statement to the probation officer. On a few occasions, the probation officer interjected a question or a statement. After that interview was completed, the probation officer, using a warrant he issued under I.C. § 20–227, placed McLean in jail for violating his probation for the alleged molestation of his stepchildren. He was arraigned the next morning when bail was set, and he remained jailed to await a probation violation hearing in Ada County.

On November 30, 1989, the state formally charged McLean in Bonneville County with two counts of lewd conduct with his seven-year-old stepdaughter. McLean waived a preliminary hearing and he was bound over to the district court. There he moved to suppress his oral and written statements to the probation officer and the subsequent statement to the detective, asserting (1) that he was induced to make the statements due to implied promises by the probation officer, (2) that his statements to the probation officer were not preceded by the required *Miranda* warnings, and (3) that, although his oral statement to the detective was preceded by *Miranda* warnings, it was the "fruit" of the unwarned first statement, and should be suppressed.

At the hearing on the motion to suppress, McLean testified that the probation officer had told him "that he wouldn't put

1. In March, 1982, McLean was convicted of rape and aggravated battery in Ada County, arising out of one episode. He received a three-year indeterminate sentence for rape and a fifteen-year sentence for aggravated battery. The court retained jurisdiction on the latter sentence. After McLean served the rape sentence, the district court suspended execution of the aggravated battery sentence and placed McLean on probation. He was living in Idaho Falls and was under supervision of a probation officer there when the present accusations of child molestations were made.

in for full time on my violation because of me coming back and stuff, and that would look good." McLean also testified that the probation officer had indicated that his sentence on the molestation charges would probably run concurrently with the sentence which had been suspended in the Ada County rape case. The probation officer's testimony conflicted with that of McLean in that he testified he had only advised McLean that no violation for absconding would be filed. He stated that he had explained to McLean the possible consequences of the violation having to do with the molestation of the girls. The probation officer insisted that at all times he made it clear to McLean that he was concerned only with the molestation charges as a violation of McLean's probation. The probation officer denied making any promises to McLean and in fact told McLean that his recommendations would not be binding on the judge or on the state with regard to the new charges.

It is undisputed that the probation officer omitted giving McLean his *Miranda* warnings prior to their conversation or prior to McLean's written statement. It is also undisputed that after the detective received McLean's written statement from the probation officer, but before the detective questioned McLean, the detective read the *Miranda* warnings to McLean, and McLean then signed a waiver of rights form. During the taped interview with the detective, McLean confessed to engaging in fondling, digital penetration and oral sex with the girls over a period of several months' time. From the testimony, the district court concluded that the unwarned statements given to the probation officer would be suppressed, but that the confession communicated to the detective would be admissible evidence at trial under the ruling in *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985).

McLean argues that his subsequent confession to the detective should be suppressed as "fruit" of the previous unwarned statement to his probation officer. McLean asserts that his statement to the detective was involuntary, because it was based upon promises from the probation officer, which, he was led to believe, would be binding on the detective as well. He asserts that *State v. Alger*, 100 Idaho 675, 680, 603 P.2d 1009, 1014 (1979), requires that confessions subsequent to a prior confession, which was improperly induced, are not admissible unless the state demonstrates that the fears and inducements which resulted in the initial confession are dispelled.

 Our standard in reviewing whether a defendant's custodial statements to police agents were voluntarily given is one of deference to the lower court's findings of fact, if they are not clearly erroneous; we then exercise free review over the question of whether the facts found are constitutionally sufficient to show voluntariness. *State v. Nobles*, 122 Idaho 509, 835 P.2d 1320 (Ct.App.1991), *aff'd*, 122 Idaho 470, 835 P.2d 1281 (1992) (citing *Davis v. North Carolina*, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966)); *State v. Kysar*, 114 Idaho 457, 757 P.2d 720 (Ct.App.1988). The question of the voluntariness of a defendant's statements must be resolved by examining the totality of the circumstances surrounding the statements. *State v. Nobles, supra, citing State v. Powers*, 96 Idaho 833, 840, 537 P.2d 1369, 1376 (1975); *see also State v. Kysar, supra.* For a defendant's statement to be involuntary, the defendant's will has to have been overborne by the police conduct at the time he confessed. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

 The district court found that no threats or promises were made by the probation officer in an attempt to obtain a confession from McLean. When asked at the suppression hearing whether the probation officer had promised that any sentence he would receive on the new charges would be concurrent with his sentence for aggravated battery, McLean responded "[N]o, he didn't promise, he implied." On redirect, McLean testified that "[the probation officer] felt that if I did certain things that this would be basically—what would happen would be probably treatment, a hundred

and eighty day program in Cottonwood, the sex offender program, and that the violation would probably run concurrent with that—or run together with that." This testimony, in conjunction with the probation officer's testimony that he had repeatedly advised McLean that he was dealing only with the probation violation, not the ultimate penalty on the new charges, supports the court's finding. Under a totality of the circumstances, the court's conclusion that the statement to the probation officer was voluntary was correct.

■ McLean's situation differs from that in *State v. Alger, supra,* where the Court determined that Alger's first statement had been compelled. Therefore, the compulsion attributable to the first statement had to be dispelled in order for the subsequent statement to be held admissible. *Id.* In McLean's case, his statement to his probation officer was voluntary; however, the unwarned nature of that statement created a presumption of compulsion which required that it be excluded from any trial on the molestation charges. *See Oregon v. Elstad,* 470 U.S. 298, 307, 105 S.Ct. 1285, 1292, 84 L.Ed.2d 222 (1985).

■ However, the *Miranda* presumption does not require that unwarned statements and their fruits be discarded as inherently tainted. As explained by the Supreme Court in *Elstad:*

It is an unwarranted extension of Miranda to hold that a simple failure to administer the warnings, unaccompanied by any coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will, so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period.

*Id.* at 309, 105 S.Ct. at 1293. After a review of the record, we reject McLean's argument that the probation officer's statements concerning the possible sentences created psychological pressures on McLean, inducing him to confess. Admittedly, we do so with some reservations. We cannot overlook the fact that the probation officer made no mention to McLean that a

conviction for lewd conduct with a child can result in a sentence of life in prison without possibility of parole. Given facts known to the officer about McLean's two prior felonies, rape and aggravated battery, and a failed probation, any suggestion by the officer that a *likely* sentence for the child molestation charges would require only a few months of imprisonment under a retained jurisdiction program would be totally unrealistic. The cold record of the officer's testimony at the suppression hearing about what he told McLean when asked what would happen to McLean, suggests that he should have been more candid with McLean. However, we are not the triers of the facts, and we cannot equate the discussion about a *possible* outcome of the situation with coercive police conduct that causes an involuntary statement. *See Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *State v. Johns,* 112 Idaho 873, 736 P.2d 1327 (1972). Implied promises of leniency, if the probation officer's statements can be construed as such, do not, in and of themselves, render a confession inadmissible; they are but a factor to consider in the totality of circumstances as to whether a defendant's admission is voluntary. *State v. Bainbridge,* 108 Idaho 273, 291, 698 P.2d 335, 353, *citing State v. Alger, supra.* The finding of the court that no promises were made to obtain the confessions is supported by substantial, although disputed, evidence. We uphold the court's conclusion that the statement to the probation officer was voluntary.

■ As to McLean's second statement, the district court found that McLean had agreed that the detective could use the written statement he had given his probation officer. The court also found that the detective did not use any threatening language or any coercive means to obtain the subsequent statement. The district court concluded that McLean knowingly, voluntarily and understandingly waived his rights, making the confession following the waiver admissible.

The record is clear as to what happened once McLean had completed a written

statement that satisfied his probation officer. The probation officer answered questions from the prosecuting attorney, as follows:

A ... Afterwards I talked to him and I said, "Now, Bonneville County is investigating this situation, they're going to want to talk to you now, we have this statement. You don't have to use this statement, this statement is between me and you as to your probation. You can just go through the interview process with them." At which point he didn't care if we used the statement or not.

Q He indicated to you he didn't care if you used the statement or not?

A Yes, he did, yes, he did. We went over the statement specifically. Specifically again—again, I can't remember the exact words that were used, but I stated that this is—"Just deals specifically with your probation. Now, they want to talk to you, they're going to ask you to do another statement or we can just use this statement that applies here." He expressed to me that he didn't care if we used this statement again in talking with the detectives. I went down and I talked to the detectives to see which one was investigating it, spoke briefly with him, informed him that he had written me a statement, and if it was okay—I believe I said if it was okay with, you know, Mr. McLean that you can probably use the same statement, and it contains all of the information that you need.

The probation officer did not mention that when he spoke to the detective on this occasion, he brought McLean's written statement with him and showed it to the detective. However, the detective testified as follows:

A Mr. Gardner brought me down a statement that he said that Mr. McLean had furnished him, allowed me to read it, and then brought Mr. McLean down and introduced him.

Q Okay, and what transpired next?

A Talked briefly with Mr. McLean, he was aware that I had that statement.

\* \* \* \* \* \*

Q Then what transpired?

A I read him his Miranda warnings.

McLean's argument that his second statement was involuntary and should be suppressed is identical to that addressed in *State v. Nobles, supra,* except that McLean was a probationer while Nobles was a parolee. We held in *Nobles* that when neither the initial statement nor the later one is coerced, the failure to administer *Miranda* warnings prior to the defendant's first inculpatory statement is not fatal to the admission into evidence of any subsequent statement made after proper warnings have been given. *Id.* 835 P.2d at 1322. Our holding, however, turned on the lack of any evidence to suggest that the officers exploited the unwarned statement to pressure Nobles into waiving his right to remain silent in confessing a second time. *Id.* The two officers each testified that nothing was communicated between them concerning the first interview with Nobles or the fact that Nobles had admitted to the crime. *Id.*

Here, the probation officer and the detective had mutual access to McLean's written statement before McLean ever talked to the detective and before McLean was advised of his *Miranda* rights. McLean's only "consent" for this to happen was contained in the unwarned statements McLean made to his probation officer. Thus, there are two critical differences which distinguish this case from *Elstad* and from *Nobles.* First, the state here, in order to show consent for the detective to use the unwarned statement, must use the unwarned statement itself. Moreover, nothing in *Elstad* or *Nobles* permits the detective to rely on the "consent" given by McLean after the detective had already received and read the unwarned statement. Second, to say that McLean's unwarned statement to his probation officer was followed by a second warned statement to the detective ignores the fact that the first statement was simply passed on to the detective before the detective even talked to McLean. With McLean's probation officer beside him, and McLean's written statement in front of him, the detective simply extracted more details from McLean to amplify the core of

information already in hand. Thus, the first statement simply grew into the second.

In its memorandum decision denying the motion to suppress, the district court noted that shortly after the detective had read McLean his rights, the probation officer warned McLean to "make sure you understand your rights and everything" before answering the detective's questions. However, McLean was not Mirandized before he agreed that his inculpatory statement, given to his probation officer in connection with the probation violation, could also be used as an admission of the molestation charges themselves.

The language of *Nobles* and *Elstad* makes it clear that the second statement, however closely it follows the first, must be taken only after the *Miranda* warnings have been given and have been waived. Here, in reality, there was no "second" statement. The first unwarned (written) statement was hand delivered by the probation officer directly to the detective without any intervening pause to Mirandize McLean. The only "consent" that preceded the delivery of the statement was part of the unwarned statements, written and oral, given to the probation officer.

Because the detective testified that the second statement was not obtained independently of the first statement, we cannot rely on *Nobles* to allow the second confession. Our review of the totality of the circumstances surrounding the second confession, and a careful reading of *Nobles*, compels us to conclude that McLean's waiver of rights was not voluntary. We hold, therefore, that the second statement must also be suppressed.

Accordingly, we vacate the judgment of conviction, reverse the order of the district court denying suppression of McLean's second statement, and remand for further proceedings consistent with the plea agreement and with this opinion.

WALTERS, C.J., and SILAK, J., concur.