*998 P.2d 80*

STATE of Idaho, Plaintiff–Appellant,

v.

Robert RADFORD, Defendant–
Respondent.

No. 24762.

Supreme Court of Idaho,
Boise, December 1999 Term.

March 29, 2000.

Hon. Alan G. Lance, Attorney General, Boise, for appellant. Michael A. Henderson, Deputy Attorney General, argued.

Westberg, McCabe & Collins, Boise, for respondent. Thomas McCabe argued.

TROUT, Chief Justice.

This is an appeal from the order of the district judge granting the defendant's motion to suppress. The defendant, Robert Radford (Radford) was indicted for first-degree burglary and first-degree kidnapping. Prior to trial, Radford filed a motion to suppress statements made to law enforcement officers. This motion was eventually granted by the district judge and the State of Idaho is now appealing that decision. The State argues the district judge incorrectly determined that our decision in *State v. Crowe*, 131 Idaho 109, 952 P.2d 1245 (1998) mandated suppression of the statements made by Radford.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

On September 1, 1991, an unknown male entered the home of C.B. and detained her with the intent to commit the crime of rape. C.B. promptly reported the incident to the Boise police, but could not identify her assailant. Eventually, because of a lack of leads, the police put the case on inactive status some time in 1992.

On June 22, 1995, Radford entered into a Rule 11 plea agreement in a completely unrelated case. The agreement called for Radford to plead guilty to a charge of sexual abuse of a minor in return for the State recommending a specific sentence, most of which would be suspended with Radford placed on probation. One of the conditions of Radford's probation was completion of the SANE (Sexual Abuse Now Ended) program. SANE is a privately operated treatment program for sex offenders and their families. The court accepted the plea agreement and Radford was given the sentence recommended by the State.

Prior to sentencing and in anticipation of the expected sentence, Radford entered into a contract with SANE. This contract specifically authorized Radford's therapist to release information regarding his treatment to law enforcement personnel. Additionally, the contract provided that Radford understood that "previously committed crimes must also be reported, and may be prosecuted...." This contract must be signed by anyone seeking entrance into the SANE program.

As part of his participation in the SANE program, Radford prepared a written sexual history and took a required polygraph examination on May 28, 1996. During the polygraph, Radford revealed that in 1991 he had entered a woman's home during the night and restrained her. This is the incident which is involved in the instant appeal.

A summary of the polygraph was provided to the SANE counselor. The next day, the counselor met with Radford's probation officer, Dottie Hook, and disclosed the evidence to her. Hook passed this information to Detective Anderson who then accompanied Hook on a visit to Radford's home that same day. During this visit, Hook had a conversation with Radford in which he described the 1991 incident. Radford stated that he entered a house wearing a ski mask and intended to rape a woman who lived there. However, upon entering the residence, Radford discovered only the intended victim's sister. He then stated he handcuffed the sister, stayed for about an hour and a half, and then removed the handcuffs and left. It is undisputed that, during the probation officer's home visit, Radford was not placed in custody and no *Miranda* warnings were given. Following the home visit, Detective Anderson reported the information to Detective Ayotte who had originally investigated the 1991 incident. After hearing the story, Ayotte believed that Radford might have committed the crime against C. B.

Radford met with Hook for an office visit on June 4, 1996, and both Detectives Ayotte and Smith attended the meeting. Prior to the interview, Detective Ayotte told Radford that he was not in custody and advised him of his *Miranda* rights. Radford then signed a written *Miranda* waiver. At first Radford refused to talk about the 1991 incident, citing the advice of his attorney; however, he did agree to talk to police about other matters. During the course of the conversation, Radford repeatedly brought up the 1991 incident, eventually agreed to discuss the incident, made admissions about it, and wrote a letter of apology to the victim. Radford was not arrested at the conclusion of the interview; however, following a search of Radford's storage unit later that day, Radford was arrested by Hook for violation of the conditions of his probation. His probation in that case was eventually revoked and Radford is now serving his sentence.

After a hearing involving testimony from several witnesses and briefing by the parties, the district judge found the facts as stated above and denied the motion to suppress. Following this Court's decision in *State v. Crowe*, 131 Idaho 109, 952 P.2d 1245 (1998), Radford filed a motion for reconsideration. After argument on that motion, the district judge reversed his decision and granted the motion to suppress the statements based on this Court's decision in *Crowe*. The State then appealed.

## II.

### STANDARD OF REVIEW

When reviewing a trial court's ruling on a defendant's motion to suppress, this Court defers to the trial court's factual findings unless they are clearly erroneous. *State v. Medley*, 127 Idaho 182, 185, 898 P.2d 1093, 1096 (1995). Based upon the trial court's findings, this Court exercises free review over whether the constitutional requirements have been met. *Id.*

## III.

### DISCUSSION

Radford has argued, both below and on appeal, that his statements should be suppressed under both the Fifth and Fourteenth Amendments to the United States Constitution, as well as Article I, Section 13 of the Idaho Constitution. Before discussing Radford's Fifth and Fourteenth Amendment claims, we must first determine if the Idaho Constitution should be interpreted to provide greater protection than the U.S. Constitution in this case.

**A. The Idaho Constitution Does Not Provide Greater Protection to Radford Under the Facts of this Case.**

Radford argues that his right to due process under the Idaho Constitution is violated in this case because he is compelled by the terms of his probation to give honest

answers concerning his sexual history and is then punished for these answers by being subjected to further prosecution. Radford argues it is fundamentally unfair to prosecute him for the disclosures he was required to make and, therefore, he is denied due process of law and the statements he made to the officers on June 4th must be suppressed.

Although Radford states that he is only requesting that the statements be suppressed, his actual argument is much broader. By stating that it is fundamentally unfair to compel him to give honest answers during treatment and be subjected to further prosecution based on those answers, Radford appears to be arguing that Idaho's due process provision should be interpreted as requiring not just the suppression of any statements compelled by the terms of his probation, and the fruit thereof, but as providing some kind of blanket immunity for all crimes which are disclosed during treatment. This conclusion is supported by Radford's argument, both in his brief and at oral argument, that the State should have to choose between requiring full disclosure during court ordered treatment, or the ability to prosecute probationers for those crimes they disclose. Radford argues the choice should be full disclosure because there is a greater benefit to society in encouraging full disclosure in order to increase the chances for successful treatment, than in punishing an individual who is already seeking treatment for his behavior.

In *Cootz v. State*, 117 Idaho 38, 785 P.2d 163 (1989), this Court held that the scope of Idaho's due process provision in Article I, Section 13 of the Idaho Constitution is not "necessarily bound by the interpretation given to due process by the United States Supreme Court." *Id.* at 40, 785 P.2d at 165. Although the due process clause of the Idaho Constitution is interpreted independently, this Court "consider[s] the rationale used by the United States Supreme Court in deciding Fourteenth Amendment due process cases." *Schevers v. State*, 129 Idaho 573, 577, 930 P.2d 603, 607 (1996). Additionally, this Court has applied the United States Supreme Court's standard for interpreting the due process clause of the United States Constitution in other due pro-

cess cases. *See, e.g., Maresh v. State, Dept. of Health and Welfare*, 132 Idaho 221, 227, 970 P.2d 14, 20 (1998) (due process case involving the determination of whether the plaintiff had a protectable liberty or property interest); *Schevers*, 129 Idaho at 577–78, 930 P.2d at 607–08 (due process case involving the deprivation of a liberty interest); *Smith v. Idaho Dept. of Correction*, 128 Idaho 768, 771, 918 P.2d 1213, 1216 (1996) (due process case involving the deprivation of a liberty interest). Finally, under the facts of the present case, there is no compelling reason to expand the protection of the due process provision of the Idaho Constitution beyond that contemplated in the Fourteenth Amendment with regard to the statements made by Radford to law enforcement officers. Because this is not a situation where we believe the Idaho Constitution provides greater protections than those given in the U.S. Constitution, the same analysis used for determining whether Radford's statements were obtained in violation of the right to due process under the U.S. Constitution will be used to determine whether those statements were obtained in violation of the Idaho Constitution.

Radford also argues that his right against self-incrimination as guaranteed by Article I, Section 13 of the Idaho Constitution has been violated. In his brief, Radford argues only that his statements, which were required by the terms of his probation (the statements made during the polygraph and the written sexual history), were compelled and therefore protected by his right against self-incrimination. However, the State is not appealing the suppression of those statements by the district judge. Rather the State is seeking only to have the June 4th statements declared admissible. Radford has not argued that these statements were obtained in violation of Article I, Section 13 and, therefore, we decline to consider Radford's state constitutional claim on this issue.

## B. The District Judge Erred in Suppressing Radford's June 4th Statements.

Radford argues that the district judge properly granted his motion to suppress because the statements were both involuntary

and "fruit" of the prior compelled statements. We will address each argument in turn.

### 1. *The Statements Were Voluntary.*

 In determining whether Radford's statements to law enforcement officers on June 4th were voluntary, we first note it is undisputed that Radford was not in custody at the time the statements were made.[1] Even if the interview were non-custodial, Radford's statements are still inadmissible if the statements were not voluntary. *See Beckwith v. United States,* 425 U.S. 341, 347–48, 96 S.Ct. 1612, 1617, 48 L.Ed.2d 1, 8 (1976); *State v. Kuzmichev,* 132 Idaho 536, 544, 976 P.2d 462, 470 (1999); *State v. Troy,* 124 Idaho 211, 214, 858 P.2d 750, 753 (1993). In order to determine the voluntariness of a confession, the Court must look to the "totality of the circumstances" and determine whether the defendant's will was overborne. *See Arizona v. Fulminante,* 499 U.S. 279, 287, 111 S.Ct. 1246, 1252–53, 113 L.Ed.2d 302, 316 (1991); *Troy,* 124 Idaho at 214, 858 P.2d at 753. In *Troy,* we set out the factors to be considered in determining whether a confession was given voluntarily. These factors include:

(1) Whether *Miranda* warnings were given;

(2) The youth of the accused;

(3) The accused's level of education or low intelligence;

(4) The length of detention;

(5) The repeated and prolonged nature of the questioning; and

(6) Deprivation of food or sleep.

*Troy,* 124 Idaho at 214, 858 P.2d at 753 (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854, 862 (1973)).

 Applying the above factors to the facts of this case, we agree with the district judge that Radford's statements were voluntary.[2] First, Radford was given *Miranda* warnings by Detective Ayotte prior to the interview. Radford acknowledged that he had been notified of his rights and understood those rights when he signed a "Notification of Rights" form and initialed the line, which read "I understand these rights, and having them in mind, I wish to talk to the officer now." Additionally, Detective Ayotte testified that he repeatedly told Radford he was free to leave and did not have to talk to the officers. The record reveals that Radford was 29 years old at the time of the interview, had graduated from high school, had attended one year of college, and had had prior contact with law enforcement. There is no indication that Radford was somehow incapable of understanding his rights or incapable of making a knowing and intelligent waiver of those rights. Finally, the interview lasted only for about two hours, not an excessive length of time.

Most of Radford's argument centers on the fifth criteria: the nature of the questioning. First, Radford argues that because part of the SANE program obligated him to try and understand the impact his actions had on his victims, and his probation officer told him that by not disclosing the names of his victims he made it appear he didn't care about his victims, he was therefore coerced into making his statements about the 1991 crime. However, while the officers were certainly trying to get him to talk, the record reveals no reference made by the officers or the probation officer concerning the requirements of the SANE program, or any threats or promises made concerning Radford's continued treatment.

---

1. Radford admits he was not in formal custody at the time of the interview, although he points out that he was required to meet with his probation officer on June 4th under the terms of his probation. In *Minnesota v. Murphy,* 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984), the U.S. Supreme Court specifically held that a probationer's regularly scheduled visit to his probation officer did not constitute a custodial situation which required *Miranda* warnings, although those warnings were given to Radford.

2. The district judge's original decision included findings of fact supporting his conclusion that Radford's June 4th statements were voluntary. Although the district judge reversed his decision based on our decision in *Crowe,* he did not change his factual findings. Neither party has appealed the factual findings and, therefore, we accept them.

Secondly, Radford argues that his statements were coerced because, after Radford stated that he did not want to talk about the 1991 incident, Detective Ayotte (1) placed the 1991 file on the table between Radford and Ayotte, and (2) told Radford that he had talked to the victim in the 1991 case and she still lived in fear. However, Detective Ayotte did not ask Radford any questions about the 1991 case after Radford indicated that he did not want to talk about it on the advice of his attorney. Instead, according to Ayotte's testimony, which the district judge found credible, Radford himself repeatedly referenced the case during the course of the interview. The record does not support Radford's argument that Detective Ayotte disregarded Radford's initial request not to talk about the 1991 incident.

■ Third, Radford argues his statements were coerced because his probation officer, in response to Radford's question about whether she would recommend he stay in treatment if he talked to the officer, told him if he was totally truthful with the officers she would recommend what was best. According to Radford, this statement meant he had to talk because otherwise he would not have been totally truthful. However, it is undisputed the probation officer did not promise she would recommend he stay in treatment even if he told the officers everything he knew. She also clearly stated she was not ordering him to talk to the officers. Rather than any attempt to coerce Radford into making a statement, it appears the probation officer was simply trying to give an honest answer to Radford's question. Even if the probation officers remarks could be construed as some type of threat or promise regarding Radford's probation status, that alone would not require the suppression of the statements. We have previously held that promises of leniency do not necessarily render a confession involuntary. *State v. Alger*, 100 Idaho 675, 680, 603 P.2d 1009, 1014 (1979). Rather, they are only a factor to be considered under the totality of the circumstances. *Id.*

Finally, Radford argues his statements cannot be considered voluntary because the officers had been given a copy of his written sexual history prior to their interview with him. In support of this argument, Radford relies on the Idaho Court of Appeals case of *State v. McLean*, 123 Idaho 108, 844 P.2d 1358 (Ct.App.1992). In *McLean*, the Court of Appeals held that a second statement given by the defendant to police, after they had been given a copy of his previous unwarned statement to his probation officer, had to be suppressed. In so holding, the Court of Appeals determined there really was no "second" statement. Rather, the first statement was simply hand delivered to the officers and was used during the questioning in order to get more information to add to that already in the statement. Therefore, the first unwarned, and therefore inadmissible, statement simply grew into the second. *Id.* at 113–14, 844 P.2d at 1363–64.

In this case, unlike *McLean*, there is no evidence that the officers in any way used, or even referred to, Radford's written sexual history during the course of the interview. Perhaps more importantly, Radford knew the officers were aware of the content of his statement for at least six days, during which time Radford had consulted his attorney and been advised not to talk about the 1991 incident. It is difficult to see how knowing the officers had a copy of the written statement had any impact in causing Radford to feel compelled to give a second statement to the officers.

We agree with the district judge that Radford's decision to make statements about the 1991 incident was voluntary. We do not condone investigations conducted in the probation office or with the probation officer present because of the clear message sent to the probationer that whatever is said will likely have some impact on his probation status. However, based on the totality of the circumstances presented here, particularly the fact that Radford had consulted with an attorney and clearly understood his rights, we find Radford's eventual decision to make statements to the officers was a product of his free will.

2. *Radford's June 4th Statements Were Not "Fruit" of the Earlier Compelled Statement.*

The State argues the district judge improperly found the June 4th statements to be

inadmissible "fruit" of the inadmissible, compelled statement Radford made during the May 28th polygraph. In contrast, Radford argues even if his statements were voluntary, the statements must be suppressed as a product of the compelled statement because the only reason the officers interviewed Radford about the 1991 incident was because they had been informed of the statement made during the polygraph examination.

As a preliminary matter, in finding the June 4th statements made by Radford were inadmissible, the district judge relied on our decision in *State v. Crowe*, 131 Idaho 109, 952 P.2d 1245 (1998). In *Crowe*, we held disclosures required by the terms of the SANE program were admissible in a probation violation proceeding, but recognized the holding in *Minnesota v. Murphy*, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984), that any statements compelled during probation could not be used in a subsequent criminal trial because it would constitute a violation of the defendant's right not to incriminate himself. The parties do not dispute the statements made by Radford during the polygraph examination and on his written sexual history are inadmissible in any criminal proceeding. The statements at issue in this appeal were not made during the course of the SANE treatment program, or otherwise compelled by the terms of Radford's probation. Therefore, the question is whether the June 4th statements are forbidden fruit of the inadmissible statements from the polygraph and written history.

 The United States Supreme Court has held the Fifth Amendment protects against the use of a witness's compelled answers and "evidence derived therefrom" in any subsequent criminal trial. *Lefkowitz v. Turley*, 414 U.S. 70, 78, 94 S.Ct. 316, 322, 38 L.Ed.2d 274, 282 (1973). Radford argues the June 4th statements are forbidden fruit of the compelled statements because the officers never would have questioned Radford about the crime had they not been informed of the substance of his compelled statements. However, the United States Supreme Court has stated that the test of whether subse-

quent evidence constitutes "fruit of the poisonous tree" is more than just a "but for" test. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). In *Wong Sun*, the Court stated that:

We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

*Id.* at 487–88, 83 S.Ct. at 417, 9 L.Ed.2d at 455. The question in the present case is not whether the officers would not have obtained Radford's June 4th statements "but for" their knowledge of his compelled statement, but rather whether the June 4th statements were sufficiently an act of free will to purge the primary taint of the compelled statement. As the United States Supreme Court has stated

[A]fter an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag. The secret is out for good. In such a sense, a later confession always may be looked upon as fruit of the first. But this Court has never gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a usable one after those conditions have been removed.

*United States v. Bayer*, 331 U.S. 532, 540–41, 67 S.Ct. 1394, 1398, 91 L.Ed. 1654, 1660 (1947).

In *Taylor v. Alabama*, the United States Supreme Court discussed the factors to be considered in deciding whether a confession was sufficiently an act of free will so as to purge it of the primary taint of an illegal arrest. The important factors included: (1) the length in time between the confession and the arrest; (2) the presence of intervening circumstances; and (3) the purpose and

flagrancy of the official misconduct. *Taylor*, 457 U.S. 687, 698, 102 S.Ct. 2664, 2671, 73 L.Ed.2d 314, 324 (1982). The third factor would not be applicable, as this case does not involve any official misconduct by law enforcement.

 Applying the remaining two factors to the facts of this case, we find the statements are sufficiently distinguishable so as to be purged of the primary taint. The June 4th statements were made a week after the first compelled statement during which time, Radford had consulted his attorney and had been advised not to talk about the 1991 case. Thus, there was an extended time period between the two statements. At the time of the interview, Radford was repeatedly told he was free to leave and he did not have to talk to the officers about the 1991 case. When Radford stated he had been advised not to talk about the incident, the officers respected this request and asked Radford no questions about the 1991 incident until Radford said he had decided to talk about it. Finally, the June 4th statements are sufficiently attenuated because those statements, unlike the compelled statement, were not made to the same people in the same place as the earlier statement. Rather, the statements were made to officers who were not present at the earlier statement and the interview took place in the probation office, not the SANE treatment center. While the officers' knowledge of Radford's compelled statement may have initially led them to interview him, the statements he made to the officers during the interview at the probation office were the result of an intervening independent act of free will. We hold that the June 4th statements were not "fruit" of the earlier compelled statement given by Radford.

## IV.

## CONCLUSION

For the foregoing reasons, we reverse the order of the district judge granting Radford's motion to suppress his June 4th statements and remand this case to the district judge for further proceedings consistent with this opinion.

Justices SILAK, SCHROEDER, WALTERS and KIDWELL, concur.