**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49950**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **OPINION Filed: September 18, 2024** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) |
| MICHAEL ELTON MCCARROLL, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Elmore County. Hon. Jonathan Medema, District Judge.

Judgment of conviction and life sentence, with fifteen years determinate, and order denying motion to suppress, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Justin R. Porter, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

Michael Elton McCarroll appeals from his judgment of conviction and sentence for lewd conduct with minor child under sixteen. McCarroll argues the district court erred in denying his motion to suppress his confession because it was involuntary. Alternatively, McCarroll argues the district court abused its discretion in sentencing him to a unified term of life, with fifteen years determinate. McCarroll's confession was voluntary, and the sentence imposed is not excessive. The order denying McCarroll's motion to suppress and his judgment of conviction and sentence are affirmed.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

After receiving a report from the Department of Health and Welfare, a detective began investigating a claim of sexual contact between McCarroll and six-year-old K.T. At the request

1

of police officers, McCarroll's grandmother drove McCarroll to the police station where he met with a detective in an interview room. Before the interview began, the detective filled in some of McCarroll's personal information on a *Miranda*[1] waiver form and handed the form to McCarroll to sign. The detective asked McCarroll if he understood his rights or had any questions, and McCarroll indicated his understanding by nodding his head. During questioning, the detective challenged McCarroll's version of events. Based on prior information the detective received regarding the incident, the detective told McCarroll he was leaving things out and not telling the truth. At that point, McCarroll requested the presence of a lawyer. After this request, the detective ended the questioning, told McCarroll to "hang tight," and left the interview room. The detective returned about thirty minutes later and told McCarroll he was willing to continue the interview if McCarroll was willing to answer his questions. Although initially reluctant, McCarroll agreed to continue the interview. Eventually, McCarroll confessed to the sexual touching between himself and K.T. McCarroll was arrested and charged with lewd conduct with minor child under sixteen, Idaho Code § 18-1508.

McCarroll filed a motion to suppress his statements, arguing he did not knowingly and voluntarily waive his right to be free from self-incrimination, his confession was involuntary, and his invocation of his right to counsel was not scrupulously honored, all in violation of his Fifth and Fourteenth Amendment rights under the United States Constitution and Article 1, Section 13, of the Idaho State Constitution.[2] After a hearing, the district court denied McCarroll's motion to suppress. The district court found that while McCarroll voluntarily met with the police, after the detective told McCarroll to "hang tight," McCarroll was effectively in custody. However, the district court found that McCarroll had already been provided with, and voluntarily and knowingly waived, his *Miranda* rights and voluntarily confessed to committing the charged offense. McCarroll entered an *Alford*[3] plea to lewd conduct with minor child under sixteen and reserved

---

[1]    *See Miranda v. Arizona*, 384 U.S. 436 (1966).

[2]    Although McCarroll contends that both constitutions were violated, he provides no cogent reason why Article I, Section 13 of the Idaho Constitution should be applied differently than the Fifth and Fourteenth Amendments to the United States Constitution in this case. Therefore, this Court will rely on judicial interpretation of the Fifth and Fourteenth Amendments in its analysis of McCarroll's claims. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.3d 961, 965 (Ct. App. 1999).

[3]    *See North Carolina v. Alford*, 400 U.S. 25 (1970).

his right to appeal the district court's denial of his motion to suppress. The district court imposed a unified life sentence, with a minimum period of incarceration of fifteen years.

McCarroll timely appealed.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

Sentencing is a matter of discretion. When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

## III.

## ANALYSIS

McCarroll argues the district court erred in denying his motion to suppress because his will was overborne by police coercion and, as a result, his confession was not voluntary. More specifically, McCarroll argues the district court did not consider the totality of the circumstances, including his personal characteristics and the details of the interrogation because the district court only considered the interview techniques when determining that McCarroll's confession was voluntary. Alternatively, McCarroll argues that even if the district court considered the totality of the circumstances, it still erred in finding the confession was voluntary. Finally, McCarroll argues his sentence is excessive. The State argues the district court correctly held that McCarroll's confession was voluntarily given and did not abuse its discretion in imposing sentence.

3

**A.** **The District Court Did Not Limit Its Analysis to Only the Interview Techniques**

The State bears the burden to prove by a preponderance of the evidence that a confession is voluntary. *State v. Culbertson*, 105 Idaho 128, 130, 666 P.2d 1139, 1141 (1983). If the defendant's free will is undermined by threats or through direct or implied promises, then the statement is not voluntary and is inadmissible. *State v. Samuel*, 165 Idaho 746, 766, 452 P.3d 768, 788 (2019). To determine whether a confession is voluntary, a court must examine the totality of the circumstances and ask whether the defendant's will was overborne by police conduct. *State v. Kent*, 167 Idaho 689, 698, 475 P.3d 1211, 1220 (2020). "The due process test takes into consideration 'the totality of all the surrounding circumstances--both the characteristics of the accused and the details of the interrogation.'" *Id.* (quoting *Dickerson v. United States*, 530 U.S. 428, 434 (2000)). Additional factors in the voluntariness determination include: (1) whether *Miranda* warnings were given; (2) the youth of the accused; (3) the accused's level of education or low intelligence; (4) the length of the detention; (5) the repeated and prolonged nature of the questioning; and (6) the deprivation of food or sleep. *State v. Radford*, 134 Idaho 187, 191, 998 P.2d 80, 84 (2000).

McCarroll argues that the district court failed to analyze the personal characteristics of McCarroll and all the details of the interrogation and, instead, only evaluated the police interview techniques, compared the tactics used in his interview to the tactics used by the officers in *Miranda v. Arizona*, 384 U.S. 436 (1966), and concluded the confession was voluntary. This claim is belied by the record as the district court considered both McCarroll's personal characteristics and the details of the interrogation.

In determining whether McCarroll's confession was not coerced and, thus, voluntarily given, the district court specifically referenced McCarroll's personal characteristics. The district court specifically noted the evaluation that assessed McCarroll's "mental condition at the time of the examination, his personality, his intellectual capabilities, his cognitive functioning, his reading and speaking abilities, his memory, and his susceptibility to coercion or influence by authority figures." Throughout its memorandum decision, the district court referenced McCarroll's mental condition and the expert's testimony regarding McCarroll's personal characteristics. For example, the district court referred to McCarroll as someone with "severe mental conditions [who] was living with [a family member] for assistance." The district court stated that McCarroll has an IQ of sixty-three and, according to his expert, can pronounce words about as well as the average

4

seventh grader, but he does not understand what many of those words mean. Further, the district court cited the testing methods of McCarroll's expert and believed the expert was credible, i.e., that the expert truthfully recited the results of those tests, but that without foundation, the conclusions were not particularly reliable. Ultimately, the district court concluded, "McCarroll was read his *Miranda* warnings and as discussed above the [court] is persuaded that he understood them and made a voluntary choice to talk with the detective." The record indicates the district court considered McCarroll's personal characteristics when evaluating whether his confession was voluntarily given.

McCarroll also argues the district court failed to consider all the details of the interrogation in determining that McCarroll's confession was voluntarily given. Again, this claim is belied by the record. The district court's memorandum decision detailed the interview, included specific time stamps of events that occurred, and set forth the detective's pertinent statements to McCarroll. Like its analysis of McCarroll's personal characteristics, many of the district court's findings regarding various details about the interrogation were addressed throughout the district court's memorandum, indicating that the district court considered more than just the interview tactics in assessing the details of the interrogation. Thus, the record reflects there is substantial evidence that the district court considered both McCarroll's personal characteristics and the details of the interrogation in finding that McCarroll's confession was voluntary.

B.    **The District Court Did Not Err in Concluding the Confession Was Voluntary Under the Totality of the Circumstances**

McCarroll argues that even if the district court considered the totality of the circumstances, it nonetheless erred because the State did not meet its burden of proving, by a preponderance of the evidence, that his confession was voluntarily given. To demonstrate his personal characteristics should weigh in favor of involuntariness, McCarroll argues he was twenty-six years old at the time of the interrogation, he was living with family members because he suffers from multiple mental and physical health conditions, and he is intellectually disabled. To show the details of the interview should weigh in favor of coercion, McCarroll argues that: (1) the interview was ninety-minutes in length; (2) the interview was an unfriendly conversation that included harassing and provocative behavior from the detective; and (3) after McCarroll invoked his right to counsel, the detective left him sitting in the room for thirty minutes, then essentially told him he would not be allowed to leave because the detective "had some things to finish up," but the

5

detective implied that McCarroll potentially could leave if he started speaking with the detective again.

Here, besides reciting the district court's findings, McCarroll's personal characteristics, his expert's findings on those characteristics, and details from the interrogation, McCarroll fails to provide any relevant citation to authority or argument explaining why the district court erred in determining those factors did not render his confession involuntary. Instead, McCarroll relies on his expert's statements as dispositive evidence that his confession was involuntary and contends that the district court should have accepted that conclusion.

However, the district court explicitly rejected some of the expert's conclusions, that without foundational evidence regarding the validity of the expert's conclusions, the conclusions were not particularly reliable. In his opening brief, McCarroll makes no argument that the district court erred in rejecting the expert's conclusion. Similarly, McCarroll makes no argument that when the district court rejects a conclusion of an expert, that expert's conclusion is nonetheless the relevant factual finding that this Court should accept. Thus, we decline to address the arguments. *See State v. Lankford*, 172 Idaho 548, 559, 535 P.3d 172, 183 (2023) (finding that general attack on findings and conclusions of district court, without specific reference to legal errors, is insufficient to preserve issue). While McCarroll argues these issues in his reply brief with citation to authority, arguments made for the first time in a reply brief are insufficient to merit appellate review. *Suitts v. Nix*, 141 Idaho 706, 708 117 P.3d 120, 122 (2005). Nevertheless, even if we address McCarroll's arguments regarding his expert, they fail.

When evaluating an accused's personal characteristics, the court should consider the age of the accused and the accused's level of education or low intelligence. *Radford*, 134 Idaho at 191, 998 P.2d at 84. McCarroll's age does not weigh in favor of finding his confession was involuntary because, at the time of the interview, McCarroll was twenty-six years old. *State v. Andersen*, 164 Idaho 309, 314, 429 P.3d 850, 855 (2018) (finding that Andersen's age did not weigh in favor of involuntariness because she was an adult); *Radford*, 134 Idaho at 191, 998 P.2d at 84 (holding that because Radford was twenty-nine years old at time of interview, it did not weigh in favor of a finding of involuntariness); *State v. Troy*, 124 Idaho 211, 215, 858 P.2d 750, 754 (1993) (finding confession not coerced where Troy was twenty-five years old at time).

Next, regarding McCarroll's expert testifying about McCarroll's level of education or low intelligence and that McCarroll was coerced into making the confession because he "presented

with really classical characteristics of a vulnerable person who tends to make coerced confessions or false confessions. He has a severe mental condition. He has a severe mental defect. He has impaired neuropsychological functioning, and he's acquiescent to questioning by whomever."

The district court found the expert to be credible, i.e., that the expert was truthfully reporting the conclusions of his testing. The district court nonetheless rejected many of the expert's conclusions because there was no foundational testimony for the conclusions, rendering the conclusions unreliable. The district court found that without the foundation underlying the conclusions, the conclusions carried very little weight. Similarly, although the expert opined that McCarroll was not able to understand the *Miranda* warnings, there was no testimony regarding which terms McCarroll did or did not understand, McCarroll's inability to understand the *Miranda* waiver form, or how McCarroll found the language on the form confusing. The district court reviewed the expert's testimony and the video of McCarroll's interview and held: "Having considered [the expert]'s opinion and the reasons stated therefore, the Court finds the evidence suggesting Mr. McCarroll did not understand his *Miranda* warnings and did not knowingly and voluntarily waive those rights is substantially outweighed by the evidence that he did."

On appeal, McCarroll does not challenge that he was provided with *Miranda* warnings, understood them, and knowingly and voluntarily waived them. We agree with McCarroll that his low level of education and intelligence should be considered in the totality of the circumstances and may weigh in favor of finding he did not voluntarily waive his rights. However, the district court considered those factors, weighed them against the other evidence, and found McCarroll's education and intelligence did not adversely affect his ability to knowingly and voluntarily waive his *Miranda* rights, which weighs against a finding that McCarroll's confession was coerced.

The details of the interrogation comprise the remaining factors and do not weigh in favor of finding McCarroll's confession was a product of coercion. First, the presence of *Miranda* warnings is a particularly significant factor to determine whether a confession was voluntarily given. *Andersen*, 164 Idaho at 314, 429 P.3d at 855. In this case, after McCarroll entered the interview room, and when asked by the detective, McCarroll indicated that he had been arrested before and understood what his *Miranda* rights were. After the detective handed McCarroll a notification of rights form that contained *Miranda* warnings, McCarroll read the form, signed it, and nodded when the detective asked if he understood it. Because McCarroll was provided with *Miranda* warnings, that factor weighs against a finding the confession was involuntary.

The length of detention is another factor that weighs against finding the confession was involuntary. McCarroll's interview lasted ninety minutes, which is insufficient, on its own, to weigh in favor of finding McCarroll's confession was coerced, as it was neither repeated nor prolonged. *Andersen*, 164 Idaho at 314, 429 P.3d at 855 (interview of approximately one hour weighed against finding confession coerced); *Radford*, 134 Idaho at 191, 998 P.2d at 84 (interview of two hours weighed against finding confession coerced); *State v. Valero*, 153 Idaho 910, 912, 285 P.3d 1014, 1016 (Ct. App. 2012) (interview of three hours and twenty-five minutes weighed against finding confession coerced). Further, although the detective repeated some of the same questions or repeatedly told McCarroll he was not telling the truth, those facts do not automatically render the interview techniques coercive. *State v. Samuel*, 165 Idaho 746, 767, 452 P.3d 768, 789 (2019) (holding that although officers repeated some of same questions, because it appeared to have been done in effort to obtain honest answers and clarify sequence of events, interview was not coercive); *State v. Troy*, 124 Idaho 211, 214-15, 858 P.2d 750, 753-54 (1993) (finding that although officer repeatedly told Troy that he knew Troy was not telling truth, interrogation was not coercive).

Finally, the detective in this case did not deprive McCarroll of food or sleep, which is the last factor in the totality of the circumstances analysis. The district court made several findings relevant to this inquiry, finding that:

> Sleep deprivation, lack of food and water, and infliction of physical pain or the threat of pain are not relevant here. While Mr. McCarroll at a few points in the interview says his stomach hurts from acid reflux and that he is thirsty, the argument that he was compelled to say anything due to lack of food or water or because his stomach hurts is absurd given what can be seen on the video.

We agree with the district court. Substantial evidence supports the district court's conclusion that McCarroll was neither deprived of food, water, or sleep nor subjected to any infliction of physical or mental pain while he was being questioned. Rather, when the detective returned to speak to McCarroll, he inquired if McCarroll needed anything. Thus, the last factor does not weigh in favor of finding the interrogation was coercive.

In sum, only McCarroll's low level of education and intelligence weighs as a factor in favor of finding his confession was involuntary. However, this factor does not outweigh the other factors. The district court reviewed the video of the interview and concluded that McCarroll did not display many of the characteristics identified by his expert during the interrogation. To the contrary, McCarroll coherently answered questions from the detective; clearly recalled events that

8

occurred from the incident resulting in the charged offense; and understood the seriousness of the allegations. The district court stated: "Watching the interview, the overall impression the court has of Mr. McCarroll is not confused or disabled, but savvy. He strikes the Court as behaving virtually identically to many other suspects in many other police interrogations who eventually confess to a crime."

Substantial evidence supports the district court's findings. Additionally, the district court was in the best position to evaluate the expert's testimony, determine its reliability, and assess it after comparing it to McCarroll's statements and behavior in the video of McCarroll's interview. As a result, we decline to disturb the district court's factual findings. Thus, the district court did not err in determining that McCarroll's personal characteristics and the details of the interrogation did not render his confession involuntary.

McCarroll next argues the interview was coercive because, while the detective provided him with *Miranda* warnings, those warnings were not honored. The State argues that because McCarroll knowingly and voluntarily waived his right to counsel before the detective asked him any further questions that were likely to elicit an incriminating response, the detective did not violate McCarroll's rights. Additionally, the State argues that because McCarroll knowingly and voluntarily reinitiated the conversation with the detective, the interview was not coercive.

Where an individual asserts his right to counsel, the interrogation must cease until counsel has been made available to him, or until he himself "initiates further communication, exchanges, or conversations with the police." *State v. Adamcik*, 152 Idaho 445, 469, 272 P.3d 417, 441 (2012) (quoting *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981)). Any responses to further interrogation are admissible only when it is shown by a preponderance of the evidence that the accused initiated further discussions and that he knowingly and intelligently waived his right to counsel which he earlier invoked. *State v. Cheatham*, 134 Idaho 565, 574-75, 6 P.3d 815, 824-25 (2000). Interrogation includes not just words, but also conduct that is reasonably and likely to elicit an incriminating response. *Id.* at 575, 6 P.3d at 825.

McCarroll argues that the interview was coercive because the detective told McCarroll he could have an attorney present but when McCarroll asked for a public defender, the detective told McCarroll he could not get a public defender unless one was appointed by the court. According to McCarroll, the detective did not otherwise assist McCarroll in obtaining counsel and he did not permit McCarroll to leave; as a result, McCarroll claims his subsequent statements were coerced

9

because McCarroll had no reason to believe the initial protections promised in the *Miranda* waiver would be provided. McCarroll asserts the detective should have provided him with new *Miranda* warnings once he was subjected to a custodial interrogation.

The district court held that McCarroll was in custody at the point of the interview when he requested an attorney, and the detective told McCarroll to "hang tight" and left the interview room for nearly thirty minutes. The State does not contest that McCarroll was in custody after he requested an attorney, so for purposes of appeal, we accept the district court's finding that McCarroll was in custody when the detective told him to "hang tight." The district court found that, at this point in the interview, the State would have been required to give McCarroll his *Miranda* warnings had it not already done so. When the detective reentered the room after leaving McCarroll, the district court summarized the colloquy as follows:

| | |
|---|---|
| [Detective]: | You all right? You want anything? |
| [McCarroll]: | I'm just wondering when I'll be getting out of here? |
| [Detective]: | I still have some things to do man. I'll tell you this much, if you want me to go get a phone book, we can arrange for you to call an attorney and have an attorney here and we can continue questioning. |
| [McCarroll]: | The only one I know of is a public defender, [name of attorney]. |
| [Detective]: | Yeah, if you are gonna request the assistance of a public defender you have to do that through the court. So, yeah. But I just want to check on you make sure you are ok. Like I said, if you change your mind, I'd be more than happy to listen to you. |
| [McCarroll]: | I'd be more than glad to continue this conversation; more or less. |
| [Detective]: | It's a yes or no. |
| [McCarroll]: | Yes. |

After agreeing to speak to the detective, McCarroll eventually confessed to sexually touching K.T. The district court recognized the interaction between McCarroll and the detective as subtly coercive because of the implied opportunity the detective provided to McCarroll: either keep talking to try and talk his way out of the situation or be brought in front of a court to request the services of a public defender. At that point in the interview, the district court stated, "The Court infers from [McCarroll's] body language and his pause before answering that Mr. McCarroll is thinking about his choice at that point," i.e., that McCarroll was thinking about whether he should continue to talk to the detective or wait and get a court-appointed public defender. McCarroll decided to talk to the detective. After finding that McCarroll was weighing his options, the district court found that while McCarroll's decision to continue to talk to the detective may have been unwise from a legal perspective, it was clearly a knowing and voluntary choice and,

10

thus, McCarroll was not coerced into confessing. We agree, as a review of the record supports the district court's findings. As the district court held, while it may have been an unwise decision from a legal perspective, McCarroll was not coerced into continuing the conversation with the detective.

McCarroll further argues the detective subverted McCarroll's *Miranda* warnings. In support of his argument, McCarroll cites *State v. Person*, 140 Idaho 934, 941, 104 P.3d 976, 983 (2004) for the proposition that an accused's statements should be suppressed when an officer does not scrupulously honor an accused's request for counsel but instead requests multiple confirmations of the defendant's intent to cease the interview and consult his attorney. The facts of this case are distinguishable from *Person*. In *Person*, rather than terminating the interrogation after Person invoked his right to counsel, the detectives repeatedly requested confirmation of Person's intent to cease the interview and consult his attorney. *Person*, 140 Idaho at 941, 104 P.3d at 983. In this case, after McCarroll invoked his right to counsel, the detective immediately left the room. When the detective returned, he offered McCarroll the opportunity to contact an attorney, advised him that a public defender would need to be appointed by the court, and gave him the option to continue to talk if wished to do so. Thus, unlike the detectives in *Person*, in this case there is substantial evidence to support the district court's conclusion that the detective in McCarroll's case did not continuously ask McCarroll to confirm his request to consult an attorney before continuing the interview.

McCarroll also cites *United States v. Bautista*, 145 F.3d 1140 (10th Cir. 1998) as instructive for the proposition that, although a suspect cannot anticipatorily invoke his *Miranda* rights, the facts weigh in favor of finding coercion when the officer provides *Miranda* warnings and then refuses to honor them. The facts of *Bautista* are also distinguishable from McCarroll's case. In *Bautista*, the federal agents interrogating Bautista advised him of his *Miranda* rights before he was in custody but continued to question him after he invoked his *Miranda* rights. *Bautista*, 145 F.3d at 1144. In this case, when McCarroll invoked his *Miranda* rights, the detective immediately ceased questioning him. It was only *after* McCarroll knowingly and voluntarily agreed to speak with the detective that the detective asked McCarroll more questions which led to McCarroll's

confession.[4]  As a result, the district court did not err in concluding the detective did not subvert McCarroll's *Miranda* warnings.  Therefore, the district court did not err in determining that McCarroll's confession was knowing and voluntary.

**C.    The District Court Did Not Abuse Its Discretion in Imposing Sentence**

Last, McCarroll argues his sentence of life, with fifteen years determinate, is excessive.  Specifically, McCarroll argues that had the district court properly considered the mitigating factors, such as McCarroll's status as a first-time offender, his remorse, his intellectual impairment, his severe mental disabilities, and his family support, it would have imposed a less severe sentence.  The State responds that the district court properly considered mitigating factors when sentencing McCarroll by referencing McCarroll's presentence investigation report, the various competency evaluations, the victim-impact statements, and a letter of support written by McCarroll's mother.

Sentencing is a matter for the trial court's discretion.  Both our standard of review and the factors to be considered in evaluating the reasonableness of the sentence are well established and need not be repeated here.  *See State v. Hernandez*, 121 Idaho 114, 117-18, 822 P.2d 1011, 1014-15 (Ct. App. 1991); *State v. Lopez*, 106 Idaho 447, 449-51, 680 P.2d 869, 871-73 (Ct. App. 1984); *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982).  When reviewing the length of a sentence, we consider the defendant's entire sentence.  *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).  Our role is limited to determining whether reasonable minds could reach the same conclusion as the district court.  *State v. Biggs*, 168 Idaho 112, 116, 480 P.3d 150, 154 (Ct. App. 2020).  Applying these standards, and having reviewed the record in this case, we cannot say that the district court abused its discretion.

## IV.

## CONCLUSION

In denying McCarroll's motion to suppress his confession, the district court properly considered the factors in the totality of the circumstances analysis.  In doing so, the district court did not err because an analysis of the factors indicates that McCarroll's confession was not coerced and, thus, was voluntarily given.  The detective did not fail to honor McCarroll's *Miranda* rights

---

[4]    We note here that in the district court's memorandum decision, the court found McCarroll's decision to speak with the detective again was knowing and voluntary.  Because McCarroll does not contest this finding on appeal, we will not address it.  As a result, the detective did not, contrary to what McCarroll suggests, ignore McCarroll's invocation of his *Miranda* rights.

12

by continuing to question him after McCarroll indicated his interest in continuing to talk rather than call an attorney or seek the appointment of a public defender. Finally, the district court did not abuse its discretion in sentencing McCarroll to a unified life sentence, with fifteen years determinate. Thus, the district court's order denying McCarroll's motion to suppress and his judgment of conviction and sentence are affirmed.

Judge LORELLO and Judge TRIBE CONCUR.